1   MICHAEL T. HOWARD, ISB No. 6128
2   WINSTON & CASHATT, LAWYERS, a
    Professional Service Corporation
3   250 Northwest Boulevard, Suite 206
    Coeur d' Alene, Idaho  83814
4   Telephone: (208) 667-2103
5   Facsimile: (208) 765-2121
    E-mail:  mth@winstoncashatt.com
6

7   Attorneys for Plaintiffs

8

9

10

11

12
         UNITED STATES DISTRICT COURT, DISTRICT OF IDAHO, SOUTHERN
13                                   DIVISION

14
    RONALD M. LUNA and MARY M.
15  LUNA, husband and wife,                  Case No.

16                          Plaintiffs,      CIVIL

17
         vs.                                 COMPLAINT AND JURY DEMAND
18

19  CHRISTIAN G. ZIMMERMAN,
20  M.D.,

21                          Defendant.

22
         Plaintiffs allege:
23

24

25

26

    COMPLAINT AND JURY DEMAND
    PAGE 1

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
250 Northwest Blvd., Suite 206
Coeur d'Alene, Idaho 83814
Phone: (208) 667-2103

1.      **PARTIES**

    1.1     At all relevant times, Plaintiffs Ronald ("Ron") Luna and Mary Luna were a married couple residing in Ontario, Oregon.

    1.2     At all relevant times, Defendant Christian G. Zimmerman, M.D. was a physician practicing in Ada County, Idaho.

2.      **JURISDICTION/VENUE**

    2.1     The acts giving rise to Plaintiffs' claims occurred in Boise, Idaho.

    2.2     Plaintiffs are domiciled, and maintain their permanent residence in Ontario, Oregon.

    2.3     Defendant resides and is domiciled in the State of Idaho.

    2.4     This Court has personal jurisdiction over the parties.

    2.5     The parties are residents of different States.

    2.6     Plaintiffs claim an amount to be proven at trial, but in excess of the jurisdictional limit of $75,000.00.

    2.7     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332.

    2.8     Venue is proper in the District Court of Idaho pursuant to 28 U.S.C. § 1391(b)(1) and (2) and D. Idaho L. Civ. R. 3.1.

COMPLAINT AND JURY DEMAND
PAGE 2

## 3.   FACTUAL ALLEGATIONS

3.1    Ron Luna is a 61 year old retired carpenter.  He and his wife, Mary, are residents of Ontario, Oregon.

3.2    Dr. Zimmerman is a neurosurgeon practicing at the Idaho Neurological Institute at St. Alphonsus Medical Center in Boise, Idaho.

3.3    Dr. Zimmerman had previously performed a multi-level fusion of Ron's cervical vertebrae at levels C1-2, and C2-C5, which included installation of screws and other hardware to hold the vertebrae together as the bones fused.

3.4    Dr. Zimmerman's prior surgeries involved placement of pedicle screws into Ron's C2, C3, C4, and C5 vertebrae, and a sub-laminar cerclage wire around the posterior arch of his C1 vertebrae.

3.5    Significantly, when Dr. Zimmerman installed the pedicle screws on Ron's C2 vertebrae, the screws penetrated the transverse foramen on both sides and abutted the vertebral arteries, which supply blood to the brain.

3.6    In May 2008 Ron fell backward and struck his head.  Thereafter, he began experiencing headaches and was seen by Dr. Zimmerman's associate, Dr. Paul Montalbano, for a neurosurgical consultation at St. Alphonsus on June 2, 2008.

COMPLAINT AND JURY DEMAND
PAGE 3

3.7    MRI and CT scans of Ron's head and neck were obtained demonstrating the cerclage wire at C1 was broken and was protruding into Ron's spinal canal.    The imaging studies also showed the presence of the C2 pedicle screws protruding into transverse foramen and abutting his vertebral arteries on both sides.

3.8    A subsequent CT Angiogram demonstrated that while the C2 pedicle screws were abutting Ron's vertebral arteries on both sides, they were not compromising the blood flow in either of them.

3.9    Nothing further was done for Ron at that time, and Dr. Montalbano continued to follow him as a neurosurgical consult.

3.10   In late October 2012 Ron was referred to Dr. Zimmerman for what was described as neck pain and headache following a fall several months earlier.

3.11   X-ray, MRI, and CT scans demonstrated that the broken cerclage wire at C1 had migrated and was extending to the dorsal thecal sac and abutting Ron's spinal cord.

3.12   An October 25, 2012 CT and CT Angiogram confirmed Ron had a dominant right vertebral artery, and that there was no dissection or stenosis caused by intrusion of the C2 pedicle screw into the transverse foramen.

COMPLAINT AND JURY DEMAND
PAGE 4

3.13   In his October 30, 2012 Admission Summary, Dr. Zimmerman's stated plan was for the "surgical intervention revision C1-2 removal of hardware. Risks, complications and benefits of the operative procedure have been discussed with patient's wife".

3.14   Dr. Zimmerman did not discuss the risks, complications and benefits of the operative procedure with Ron before obtaining his written consent.

3.15   Dr. Zimmerman performed surgery on Ron's neck the next morning, October 31, 2012.   The pre-operative diagnosis was "broken cerclage wire intercanalicular placement, status post fall".

3.16   Despite a lack of any symptomatology necessitating intervention of Ron's prior C2-5 fusion or hardware, Dr. Zimmerman's operative procedure also included "hardware removal".

3.17   Neither Ron nor Mary were apprised of the reason or need for removal of the non-offending hardware, and Dr. Zimmerman's records are silent on the issue.

3.18   Based upon Ron's prior imaging studies, Dr. Zimmerman was aware, or should have been aware, that removal of the C2 pedicle screws carried with it a risk of damaging Ron's vertebral arteries, which were abutting the pedicle screws on both sides.

COMPLAINT AND JURY DEMAND
PAGE 5

3.19   There is nothing contained within the medical records demonstrating a need to remove the C2-5 hardware to address the offending broken cerclage wire, or that the C2 pedicle screws were compromising Ron's vertebral arteries.

3.20   The surgery began with removal of the C2-C5 hardware.   During removal of the right-sided, C2 pedicle screw, Dr. Zimmerman observed "a flash of blood", which was controlled.

3.21   Dr. Zimmerman removed the remainder of the C2-C5 hardware, the cerclage wire, and installed a transarticular screw and bone graft at C1-C2.

3.22   Following his surgery, Ron was slow to wake up and within hours, a brain MRI revealed extensive brain damage due to lack of blood flow from a suspected right vertebral artery injury where the pedicle screw at C2 had been removed.

3.23   A subsequent head and neck CT angiogram confirmed that Ron's right vertebral artery had been dissected (cut) and was occluded at the point it passed through the C2 transverse foramen, preventing blood from flowing to his brain, and causing extensive ischemic infarction (tissue death due to lack of blood) throughout Ron's brain, including the cerebellum, left thalami, corpus callosum, basal ganglia, pons, and medulla.

COMPLAINT AND JURY DEMAND
PAGE 6

3.24   Due to the extent of the damage, Ron was not expected to live, and Mary was forced to make the difficult decision to discontinue life supporting measures.

3.25   However, to the surprise of everyone, Ron continued to breathe following removal of the ventilator, and over time has regained some functionality. Unfortunately, despite these improvements, Ron has been rendered a complete invalid, having very limited ability to speak or move, and requiring advanced nursing care for the remainder of his life.

3.26   Plaintiffs have complied with the requirements of I.C. §6-1001 et. seq.

## 4.   FIRST CAUSE OF ACTION – MEDICAL NEGLIGENCE

4.1   Plaintiffs re-allege paragraphs 1.1 through 3.26 of the Complaint as though fully set forth herein.

4.2   The primary purpose of the October 31, 2012 surgery was to remove a broken piece of cerclage wire that was compromising Ron's spinal cord at the C1 level.

4.3   The October 26, 2012 CT of Ron's cervical spine confirmed that there were no fractures or listhesis in the prior fusion of C2-C5.

4.4   The June 1, 2008 and October 26, 2012 imaging studies identified that the pedicle screws on Ron's C2 vertebrae penetrated into the transverse foramen

COMPLAINT AND JURY DEMAND
PAGE 7

and abutted the vertebral arteries, particularly on the right. However, the June 1, 2008 and October 30, 2012 CT Angiograms confirmed that the pedicle screws were not compromising the right vertebral artery.

4.5    Dr. Zimmerman knew or should have known that because the pedicle screws at C2 abutted the vertebral arteries, removal of those screws carried a risk of injuring one or both of the vertebral arteries.

4.6    Injury or damage to the vertebral artery carries a high risk of brain damage or death.

4.7    Removal of the cerclage wire at C1 did not require removal of pedicle screws at C2.

4.8    Dr. Zimmerman's records to not provide any basis or justification for his decision to remove the C2-C5 hardware.

4.9    The clinical and radiographic findings do not demonstrate instability of the prior C1-C2 fusion.

4.10    Dr. Zimmerman's records do not provide any basis or justification for his decision to install a transarticular screw at C1-C2.

4.11    Dr. Zimmerman owed Ron Luna a duty to utilize that degree of care applicable to a physician of a similar class, functioning in a similar capacity, as it existed in Ada County, Idaho at the time of his services as alleged.

COMPLAINT AND JURY DEMAND
PAGE 8

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
250 Northwest Blvd., Suite 206
Coeur d' Alene, Idaho 83814
Phone: (208) 667-2103

4.12   Dr. Zimmerman breached his duties to Ron Luna as described.

4.13   As a direct and proximate result of said breaches, Ron Luna has been damaged in an amount to be proven at trial.

## 5.   SECOND CAUSE OF ACTION – INFORMED CONSENT

5.1   Plaintiffs re-allege paragraphs 1.1 through 4.13 of the Complaint as though fully set forth herein.

5.2   Dr. Zimmerman owed Ron Luna a duty to provide disclosures and advice regarding his medical care and treatment as would ordinarily be made under the same or similar circumstances by a physician of a similar class, functioning in a similar capacity, as it existed in Ada County, Idaho at the time of his services as alleged.

5.3   Dr. Zimmerman breached his duties as described when he failed to provide Ron Luna with the advice and disclosures expected of a similarly trained and situated physician regarding the surgery he performed on October 31, 2012.

5.4   A reasonable person in the same or similar situation as Ron Luna would not have consented to the procedures performed by Dr. Zimmerman had the advice and disclosures expected of a similarly trained and situated physician been given.

COMPLAINT AND JURY DEMAND
PAGE 9

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
250 Northwest Blvd., Suite 206
Coeur d' Alene, Idaho 83814
Phone: (208) 667-2103

5.5    As a direct and proximate result of said breaches, Ron Luna has been damaged in an amount to be proven at trial.

## 6.    THIRD CAUSE OF ACTION – LOSS OF CONSORTIUM

6.1    Plaintiffs re-allege paragraphs 1.1 through 5.5 of the Complaint as though fully set forth herein.

6.2    As a direct and proximate result of the damage to Ron Luna from said breaches, Mary Luna has been damaged in an amount to be proven at trial.

## 7.    DEMAND FOR JURY TRIAL

7.1    Plaintiffs request a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b) and D. Idaho L. Civ. R. 38.1.

**WHEREFORE**, Plaintiffs pray that:

1.    Judgment be granted in favor of Plaintiffs for all claims against Defendant in an amount to be proven at trial, but in excess of the jurisdictional limit of $75,000.00;

2.    Plaintiffs recover all costs and attorneys' allowed by law; and

3.    For such other relief the Court deems just and equitable.

DATED this 13th day of February, 2015.

MICHAEL T. HOWARD
ISB No. 6128
Attorneys for Plaintiffs

COMPLAINT AND JURY DEMAND
PAGE 10

*Winston & Cashatt*
A PROFESSIONAL SERVICE CORPORATION
250 Northwest Blvd., Suite 206
Coeur d' Alene, Idaho 83814
Phone: (208) 667-2103